IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:20-CV-34-Z |
| BP AMERICA PRODUCTION COMPANY, | § § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION**
**DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter comes before the Court on Plaintiff's Original Complaint for Declaratory Judgment and Application for Temporary Restraining Order and Preliminary Injunction, filed February 13, 2020 (ECF No. 1) ("Motion for TRO").[1] Plaintiff moves the Court to enter, among other relief, a temporary restraining order ("TRO") to enjoin Defendant — or any person in active concert or participation with Defendant — from directly or indirectly assigning to Courson Oil & Gas, Inc. ("Courson") any of Defendant's successor rights under a 1994 lease.

Having reviewed the Motion for TRO and its Appendix, the Court concludes that Plaintiff cannot satisfy all four legal requirements for issuance of a TRO. The Court therefore DENIES Plaintiff's Motion for TRO without prejudice to Plaintiff's right to pursue a preliminary injunction, seek declaratory judgment, or to otherwise prosecute its complaint against Defendant.

---

[1] Though Plaintiff requests (1) three different forms of relief and (2) an *immediate* hearing to be set on February 14 based on a document dated February 13 and time-stamped 3:09 p.m. (CST), this Memorandum Opinion and related Order will address *only* Plaintiff's request for a temporary restraining order. The Court therefore will refer to Plaintiff's entire document (ECF No. 1) as "Motion for TRO" throughout this Memorandum Opinion and in the related Order.

**BACKGROUND**

In 1994, Barbara Woodward Lips entered into a five-year hydrocarbon exploration and development lease with Alpar Resources, Inc. *See* Oil and Gas Lease 1, filed February 13, 2020 (ECF No. 1-1) ("Alpar Lease"); Alpar Lease ¶ 2, at 7. The Alpar Lease includes a one-square-mile tract in Roberts County, Texas, identified as "Section 157" in both the Alpar Lease and the Motion for TRO. *See* Alpar Lease at 2; *id.* at 29.[2] Relevant here, Paragraph 7 of the Alpar Lease states that the "right and obligations of Lessee hereunder are not assignable or transferable in any respect as to segregated portions of the leased premises or as to only certain depths under the leased premises." Alpar Lease ¶ 7, at 15.

When Lips died two years later in 1996, her last will and testament devised to Plaintiff the mineral estate in the subsurface of Section 157. *See* Alpar Lease at 21. In a third amendment to the Alpar Lease that intended to bring the lease into accord with Lips's last will and testament, Plaintiff and Alpar Resources, Inc., agreed to amend Paragraph 7 to read as follows: "The rights and obligations of the Lessee hereunder are not assignable or transferable in any respect by it, except upon the written approval of Bank One Trust Company, N.A., as Agent, or any successor Agent, which approval shall not be unreasonably held." *Id.*

Later in 1996, Defendant became the successor to Alpar Resources, Inc.'s oil and gas exploration and development rights.[3] That same year, Defendant entered into a preferential

---

[2] The Alpar Lease as originally written in 1994 described the size of Section 157 as 697 acres. *See* Alpar Lease at 2. The preferential purchase agreement refers to the plot as being "640.0 acres, more or less." Alpar Lease at 29. For the purposes of deciding the Motion for TRO, the Court need not resolve the discrepancy in lot size; the difference is not sufficiently large to alter the Court's analysis of irreparable harm *infra*.

[3] Successor interest initially lay with Amoco Production Company, which is the predecessor company to Defendant. *See* Motion for TRO ¶ 10, at 4. Defendant appears to confirm this fact in passing. *See* Letter from BPX Energy to Courson Oil & Gas, Inc., dated Dec. 4, 2019, *in* Alpar Lease at 29. The Court's independent analysis on this extremely short timeline appears to confirm this corporate evolution. *See* British Petroleum, Who We Are: Heritage Brands, https://www.bp.com/en/global/corporate/who-we-are/our-history/heritage-brands.html#accordion_History of Amoco (last visited Feb. 20, 2020). The veracity of this fact as asserted by Plaintiff does not impact the Court's analysis and is only included here to clarify the succession of interests and ensure an uninterrupted chronology of events.

purchase right agreement ("PPR Agreement") with Courson for Defendant's Section 157 oil and gas exploration and development rights from the surface to a depth of 8,400 feet; the PPR Agreement would be triggered if Defendant chose to assign its interest in Section 157 to any other third party. *See* Motion for TRO ¶ 12, at 4; Alpar Lease at 27.

In September 2019, Defendant finalized a Purchase and Sale Agreement ("PSA") with Latigo Petroleum, LLC ("Latigo"). *See* Letter from BP America Production Company to Courson Oil & Gas, Inc., dated Oct. 24, 2019, *in* Alpar Lease at 23. Pursuant to the PPR Agreement, Defendant offered Courson a preferential right to purchase the previously described interest in Section 157. *See id.* Courson elected to exercise this preferential purchase right in November 2019. *See* Letter from Courson Oil & Gas, Inc. to BP America Production Company, dated Nov. 5, 2019, *in* Alpar Lease at 28.

Plaintiff did not consent to the assignment from Defendant to Courson before defendant finalized the assignment in December 2019. *See* Motion for TRO ¶ 17, at 5; Alpar Lease at 29-32. On January 20, 2020, Defendant notified Plaintiff by mailed letter that Courson had exercised its preferential right to acquire Defendant's exploration and development rights in Section 157. *See* Letter from BP America Production Company to Mayo Foundation for Medical Research and Education, dated January 20, 2020, *in* Alpar Lease at 34. In that same letter, Defendant requested Plaintiff's consent to the assignment even though Defendant interpreted the third amendment to the Alpar Lease as requiring only *notice* and not *consent* from Plaintiff because Plaintiff's interpretation would amount to "an unreasonable restraint on alienation." *See id.* at 35. At present, the Court interprets the Motion for TRO and the Alpar Lease to apportion property rights in Section 157 as depicted in the following simplified cross-section diagram:



**LEGAL STANDARD**

A federal court sitting in equity has power to issue a TRO. FED. R. CIV. P. 65. The standard for a TRO is generally the same as the standard for a preliminary injunction. *See May v. Wells Fargo Home Mortg.*, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013) (Fitzwater, C.J.) (quoting *Asadoorian v. Travis*, 2011 WL 2224984, at *1 (D. Mass. June 7, 2011)). The standard for a preliminary injunction consists of four factors that Plaintiff must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest." *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) (citing *Roho Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)); *see also Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A TRO, like all injunctive relief, is an extraordinary remedy requiring the applicant to unequivocally show the need for its issuance. *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted), *cert. denied*, 134 S. Ct. 1789 (2014). The party moving for a TRO must carry

the burden as to *all* four elements before a TRO may be considered. *Cf. Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

**ANALYSIS**

The Court's analysis of the Motion for TRO follows the four factors for a TRO listed above. When, as here, the Plaintiff needs to satisfy *all* four criteria, failure to succeed on *any* of the four criteria automatically results in "failure to succeed." *See, e.g.*, *Voting for America, Inc. v. Steen*, 732 F.3d at 386. Therefore, if the Plaintiff fails to satisfy even one TRO factor, the Court may logically conclude that it fails to meet its burden for granting the TRO regardless of success on the other prongs.[4] After considering Plaintiff's Motion for TRO, all the exhibits thereto, and the convoluted succession of interests on both sides of the Alpar Lease, the Court FINDS that Plaintiff is not likely to suffer irreparable harm in the absence of a TRO. Therefore, the Court DENIES the Plaintiff's Motion for TRO.

To prevail on the "irreparable harm" prong, the movant must prove that the non-movant party will cause specific, future injury unless the Court grants the requested TRO. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 107 (1983). Speculative injury is not enough; there must be more than an unfounded fear on the part of the party moving for a TRO. *See Holland v. America Ins. Co. v. Succession of Roy,* 77 F.2d 992, 997 (5th Cir. 1985). The Court has held in past cases that irreparable harm — as the term itself suggests and as the Supreme Court and treatise writers have stated — is a *difficult* standard to meet. By definition, an *irreparable* harm must be one that cannot be redressed by legal remedies or equitable remedies less drastic than a TRO.

---

[4] Incidentally, this result holds true *mathematically* even if one of the criteria contains an unknown or non-zero value. Expressed in the language of symbolic logic, $\prod_1^{n-1} p_n = 0 \Rightarrow \prod_1^n p_n = 0, \forall_p \in \mathbb{R}$, where $p$ is the probability of success on factor $n$. In other words: If the product of a series of probabilities is equal to zero, then it is logically implied and logically necessary that multiplying by an additional probability will result in a product of zero for any probability that falls into a set of all the real numbers.

Here, Plaintiff fails to demonstrate to the Court's satisfaction that is will suffer *irreparable* harm from Defendant's assignment of its oil and gas exploration and development rights to Courson. In Paragraphs 29 and 30 of its Motion for TRO, Plaintiff repeatedly and breathlessly asserts that its injury will be "imminent" and "irreparable," but never once explains how the threatened harm cannot be remedied by lesser legal or equitable relief. Furthermore, Plaintiff never once supplies *examples* of the non-speculative, future harm that will be inflicted on Plaintiff in the next fourteen days. Instead, Plaintiff offers line after line of conclusory statements and a recitation — rather than application — of the law to the facts. *See* Motion for TRO ¶¶ 29-30, at 9.

The Court cannot supply Plaintiff with the facts and arguments necessary to prevail under the stringent TRO standards. Even if the Court were authorized to fill the gaps in Plaintiff's Motion for TRO, *nothing* in the papers suggests that monetary damages or less drastic equitable relief would not adequately compensate Plaintiff for any harm to its mineral rights in Section 157 inflicted in the next *fourteen days*. Indeed, even assuming Courson continues to frustrate Plaintiff's use and exploitation of the property in the ways alleged in the Motion for TRO — *see, e.g.*, Motion for TRO ¶ 19, at 6-7 — quantifiable contract damages could feasibly compensate Plaintiff for any economic loss. Furthermore, because the alleged harms are feasibly remedied by subsequent preliminary or permanent *injunctive* relief — with the benefit of full briefing and argument by *both* parties — Plaintiff has not proved that the harm alleged is *irreparable* in the next fourteen days.

Because Plaintiff has failed to provide convincing evidence of future irreparable harm, Plaintiff logically cannot satisfy *all four* requirements it must prove before the Court may grant the extraordinary measure of a TRO. Consequently, the Court DENIES Plaintiff's motion for a temporary restraining order without prejudice to Plaintiff's right to pursue a preliminary injunction, seek declaratory judgment, or to otherwise prosecute its complaint against Defendant.

**SO ORDERED**.

February 14, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE